# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| J.B. POINDEXTER & CO., INC. and <br> EFP, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ROI INDUSTRIES GROUP, INC. d/b/a <br> ROI MACHINERY & AUTOMATION, INC. <br> and KEVIN M. SAYLOR <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | No. _____ <br><br> Judge: _____ |

## COMPLAINT

Plaintiffs, J.B. Poindexter & Co., Inc. ("JBP") and EFP, LLC ("EFP"), through counsel, file this Complaint against Defendants ROI Industries Group, Inc. d/b/a ROI Machinery & Automation, Inc. ("ROI") and Kevin M. Saylor ("Saylor") and aver as follows:

## NATURE OF THE ACTION

1. This is an action for breach of contract and all causes of action and damages relating to and stemming therefrom. The contract that is the subject of this action (the "Contract") is attached as **Exhibit A**.

## PARTIES

2. Plaintiff JBP is a Delaware corporation with its principal place of business located at 1100 Louisiana Suite 5400, Houston, Texas 77002. JBP is the parent company of EFP.

3. Plaintiff EFP is a Delaware limited liability company with its principal place of business located at 223 Middleton Run Road, Elkhart, Indiana 46516, and is permitted to conduct business in Tennessee. As such, EFP also has a plant location in Tennessee, located at 1501

Corporate Place, Suite 100, La Vergne, Tennessee 37086. The plant wherein the Business Unit was located for purposes of the Contract, of which Defendants' breaches are the subject of this litigation, is EFP's location. EFP is a division of JBP.

4. Defendant ROI is a North Carolina corporation with its principal place of business located at 1534 Cher Drive, Building 2, Durham, North Carolina 27713. ROI can be served through its registered agent, President Kevin M. Saylor, at its principal place of business.

5. Defendant Saylor is the President of ROI and a resident of the state of North Carolina, who personally resides at 903 East Oak Drive Durham, North Carolina 27705.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as neither Plaintiff is a citizen or incorporated in the same state as either Defendant, and because the amount in controversy exceeds $75,000.

7. This Court has personal jurisdiction over the parties to this action because ROI contracted with Plaintiffs to specifically supply EFP with two compact palletizers at its plant location in LaVergne, Tennessee. JBP signed the Contract on EFP's behalf, with the understanding that the Contract provided for ROI to deliver goods to EFP's plant in Tennessee. And ROI's breach of its contractual obligations resulted in EFP incurring damages at its Tennessee location.

8. Saylor is the President of ROI and, upon information and belief, used the company as his alter ego and is therefore jointly and severally liable for any and all wrongs committed by ROI as it pertains to this litigation.

9. Venue is proper in this Court pursuant to the Contract and 28 U.S.C. § 1391.

## CHOICE OF LAW

10. The Contract, its interpretation, and all matters related thereto, are governed by Texas law, per the terms of the Contract.

## FACTUAL BACKGROUND

### I. Parties and Contract Terms

11. JBP is a privately-held, diversified manufacturing company. It manages a wide variety of business units, including those that engage in trucking, cargo management, and specialty manufacturing segments offering precision-machined components and expandable foam plastics.

12. EFP is a division of JBP.

13. EFP is an industry leader in providing exceptional foam molding and fabrication solutions. Since the 1950's, EFP has been committed to developing innovative expanded foam products to successfully meet the needs of thousands of companies nationwide.

14. EFP works closely with customers in consumer products, automotive, recreational vehicles, building products, and agricultural markets as well as re-sellers and more. For the pharmaceutical and food industries, offering a wide range of cold chain solutions.

15. It delivers customized foam molding and fabrication services, as well as a wide range of component and packaging needs.

16. EFP did not manufacture gel packs or other water-based refrigerants necessary for cold chain packaging design and qualification at the time it entered into the Contract.

17. Gel packs typically make up 25% of the cold chain packaging spend in EFP's two key market segments.

18. EFP is perceived by the market as a molder of coolers, not a complete cold chain packaging provider.

19. As such, EFP required a company like ROI to provide a solution to its need that would adequately and sufficiently allow EFP to compete in the market with new manufacturing capability.

20. ROI designs, manufactures, and produces a range of productivity-enhancing equipment to help companies work efficiently, including a compact palletizer.

21. Plaintiffs contracted with ROI in August 2018 for ROI to supply two compact palletizers (the "Machines") to EFP as part of a larger EFP gel manufacturing agreement.

22. Plaintiffs agreed to pay ROI $302,812.00 for the Machines.

23. ROI agreed to deliver the Machines to EFP's Tennessee plant no later than 18 weeks after Plaintiffs approved the approval drawings.

24. Per the terms of the Contract, Plaintiffs agreed to promptly pay ROI 20% of the cost of the Machines, and 40% (for a total of 60%) after Plaintiffs approved the approval drawings.

25. The remainder of the purchase price (the remaining 40%) would be paid 30 days after successful installation and acceptance of the Machines by Plaintiffs.

26. The Contract also provided that ROI would be liable to Plaintiffs for liquidated damages in the amount of $500 for every day passed the date specified for completion of the project, August 15, 2019.

## II. Plaintiffs' payments, ROI's non-performance, and opportunity to cure.

27. EFP finalized the purchase order for the Machines and their necessary parts on September 14, 2018.

28. EFP began issuing the required payments to ROI on October 1, 2018, and completed payout of the 60% owed to ROI on November 19, 2018.

29. In total, EFP paid ROI $181,087.20 (60% of the total purchase price, as required by the Contract), which broke down as follows:

| | |
|---|---|
| October 1, 2018 | $26,329.20 |
| October 8, 2018 | $34,033.20 |
| November 19, 2018 | $120,724.80 |
| **Total** | **$181,087.20** |

30. Despite issuing the required payments to ROI, ROI did not supply the Machines to Plaintiffs.

31. Plaintiffs allowed ROI an opportunity to cure on or around November 15, 2019, allowing ROI additional time to complete its obligations under the Contract.

32. Despite this, ROI still failed to provide the Machines as the Contract required.

### III. Alter-Ego Theories, Demand Letter, and Litigation.

33. As noted previously, Saylor is the President of ROI.

34. Upon information and belief, Saylor uses ROI as his alter ego.

35. Saylor and ROI use the same mailing address in North Carolina for business purposes, which is also ROI's principal place of business.

36. Saylor holds five patents, all associated with compact palletizers, compact dual palletizers, and compact depalletizers.[1]

37. All five of these patents were assigned to ROI after the patents was granted.

38. Upon information and belief, ROI utilized Saylor's patents in performance of its business operations.

39. Upon information and belief, Saylor used ROI as his own shell corporation.

---

[1] The Patent Numbers for said patents are 10676292, 10392203, 10287112, 9902573, and 9511957.

40. A little over one month before the August 15, 2019 completion date, on July 12, 2019, Saylor filed forms with the United States Patent Office assigning his five patents back to him—removing them from ROI's possession.

41. Upon information and belief, Saylor did so in an attempt to shield any potential loss of his right to these patents in the event that ROI is forced to file bankruptcy as a result of this litigation, as he knew ROI was never going to be able to fulfill its obligations under the Contract.

42. Upon information and belief, at all relevant times, Saylor used ROI as his own alter ego and is therefore jointly and severally liable for Plaintiffs' damages and attorneys' fees as set forth in this Complaint.

43. Plaintiffs sent ROI a demand letter in an attempt to resolve this case on June 17, 2020.[2]

44. Plaintiffs have heard no communication with Defendants since they sent the Demand Letter attempting to resolve the ongoing dispute.

45. And—over two years after the ROI contracted with Plaintiffs to deliver the Machines—Defendants have still failed to deliver the Machines to EFP.

46. Due to Defendants' repeated failure to perform their obligations in the Contract, Plaintiffs canceled the Contract and filed the instant action to recover the 60% down payment it paid to ROI, liquidated damages provided by the Contract, reasonable attorneys' fees and costs, and any and all such other relief that this Court finds appropriate.

## **COUNT I: BREACH OF CONTRACT**

47. Plaintiffs incorporate by reference the averments in the foregoing paragraphs as if fully restated herein.

---

[2] Demand Letter is attached as **Exhibit B**.

48. A valid contract existed between Plaintiffs and ROI.

49. Plaintiffs made an offer to ROI to purchase the Machines for the total price of $302,812.00.

50. ROI accepted this offer, and both parties memorialized their acceptance of the terms of this offer in the Contract.

51. Both parties understood the terms of the contract, and even added a written addendum to the Contract after the parties agreed on the change of certain ancillary terms.

52. All communications and terms of the agreement between the parties were memorialized in the Contract.

53. Both parties signed the Contract and agreed to be bound by its terms.

54. EFP paid the 60% payment ($181,087.20) to ROI, as required by the Contract.

55. ROI never provided the Machines to Plaintiffs, as it was required to do under the Contract.

56. ROI never returned the 60% payment to EFP.

57. Plaintiffs have suffered damages as a result of Defendants' breach, including compensatory and liquidated damages, as well as attorneys' fees and costs.

## COUNT II: FRAUD IN THE INDUCEMENT

58. Plaintiffs incorporate by reference the averments in the foregoing paragraphs as if fully restated herein.

59. Defendants promised to provide the Machines to Plaintiffs, knowing full well that they would not be able to do so.

60. Defendants knew that Plaintiffs would rely on this misrepresentation and enter into an agreement with Defendants for them to supply the Machines.

61. Plaintiffs did in fact rely on Defendants' representations.

62. And Plaintiffs were harmed as a result of relying on Defendants' representations.

63. Specifically, Defendants informed Plaintiffs that they could supply Plaintiffs with the needed Machines.

64. Plaintiffs, relying on this representation, entered into the Contract with Plaintiffs to provide the Machines.

65. Defendants took Plaintiffs' money, yet never made any attempt to supply the Machines or return the 60% payment to Plaintiffs.

66. Plaintiffs suffered damages as a result for which they seek compensatory and punitive damages and attorneys' fees and costs.

## COUNT III: ALTER EGO AND JOINT AND SEVERAL LIABILITY

67. Plaintiffs incorporate by reference the averments in the foregoing paragraphs as if fully restated herein.

68. As set forth in the Background Facts above, Saylor used ROI as his alter ego.

69. Specifically, upon information and belief, Saylor, among other things,

   a. used ROI as his own shell corporation;

   b. controlled the business and affairs of ROI;

   c. disregarded legal formalities and failed to maintain arm's length relationships among his and ROI's dealings;

   d. used the same office or business location as ROI;

   e. used ROI as a mere shell or conduit for himself;

   f. used ROI to perpetuate the fraud set forth in Count II; and

      g.      used ROI to shield against personal obligations, in particular liability for failure to perform under the Contract and other averments set forth in this Complaint.

70. Additionally, ROI is currently in default with the North Carolina Secretary of State, and any protection that the corporate veil may afford Saylor should be disregarded as a result.

71. As such, upon information and belief, at all relevant times, Saylor used ROI as his own alter ego and is therefore jointly and severally liable to Plaintiffs for all damages and attorneys' fees as set forth in this Complaint, regardless of whether such damages were actually the fault or responsibility of ROI.

## COUNT IV: ATTORNEYS' FEES

72. Plaintiffs incorporate by reference the averments in the foregoing paragraphs as if fully restated herein.

73. The Contract in question in this litigation is governed by Texas law, per the agreement of the parties as set forth in the Contract itself.

74. Per Tex. Civ. Prac. & Rem. Code § 38.001 et seq., in addition to other recoverable damages, a party can recover from an individual or corporation its attorneys' fees that it incurred as a result of being forced to bring litigation for, among other things, breach of an oral or written contract or for failure to furnish material.

75. ROI is a corporation, and Saylor is an individual.

76. As set forth above, Defendants breached the Contract that is the subject of this litigation, which required them to furnish materials to Plaintiffs.

77. And as further set forth above, Defendants fraud resulted in Defendants failure to furnish materials.

78. As a result, Plaintiffs have suffered damages and incurred attorneys' fees.

79. Per Tex. Civ. Prac. & Rem. Code § 38.001 et seq., Defendants have 30 days from the receipt of this Complaint to resolve the matter, otherwise they are liable to Plaintiffs for said attorneys' fees.

80. In the event that this matter is not disposed of within 30 days, Plaintiffs request that this Court award them all reasonable attorneys' fees and costs as this Court deems appropriate.

## PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiffs respectfully demand a trial by jury of twelve, and request the following relief:

a. Compensatory damages in the amount of $181,087.20.

b. Liquidated damages in an amount to be determined at trial, as these damages continue to grow with each passing day. For example, Plaintiffs were entitled to liquidated damages of $152,500.00 as of the June 17, 2020 Demand Letter, and are entitled to $251,000.00 as of the filing of this Complaint.

c. Punitive damages in an amount not to exceed $150,000.00.

d. Plaintiffs' reasonable attorneys' fees and costs.

e. Pre-judgement interest on any monetary award.

f. A trial by a jury of twelve as to all triable issues of fact.

g. Any further and such additional relief as may be just and appropriate.

Respectfully submitted, this 30th of December, 2020.

| | |
|---|---|
| THE LAW OFFICE OF STEPHAN WRIGHT, PLLC | THE LAW OFFICE OF SHANE V. CORTESI |
| BY: /s/*Stephan R. Wright* <br> Stephan R. Wright (#031494) <br> 2288 Gunbarrel Rd. <br> Ste. 154/Box 247 <br> Chattanooga, TN 37421 <br> Telephone: (423) 826-6919 <br> Facsimile: (423) 826-6929 <br> *swright@stephanwright.com* <br> *Attorneys for Plaintiffs* | BY: /s/*Shane V. Cortesi* <br> Shane V. Cortesi (#029785) <br> 424 Church Street, Suite 2000 <br> Nashville, TN 37219 <br> Telephone: (615) 651-7401 <br> Fax: (635) 651-7401 <br> *shane.cortesi@cortesilaw.com* <br> *Attorneys for Plaintiffs* |